# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID MIRANOWSKI, | 1:12-cv-01625-BAM (HC) |
| Petitioner, | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DIRECTING CLERK OF COURT TO ENTER JUDGMENT IN FAVOR OF RESPONDENT, AND DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY |
| v. | |
| M. STAINER, | [ECF No. 7] |
| Respondent. | |

Petitioner is proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Pursuant to 28 U.S.C. § 636(c)(1), the parties have consented to the jurisdiction of the United States magistrate judge. Local Rule 305(b).

**RELEVANT HISTORY**

On July 19, 2010, Petitioner pled guilty to assault by means likely to produce great bodily injury. (Cal. Penal Code § 245(a)(1).) On July 21, 2010, the San Bernardino County Superior Court sentenced Petitioner to four years in state prison.

Petitioner did not appeal his conviction; however, he filed three post-conviction state court petitions. On October 5, 2011, the Kern County Superior Court denied the petition in a reasoned decision. On February 8, 2012, the California Court of Appeal, Fifth Appellate District, denied the second petition for writ of habeas corpus without prejudice to refiling in the event the California Supreme Court found that section 2933.6, subdivision (a), as applied to prisoners validated as prison gang members/associates and placed in a secured housing unit or administrative segregation prior to January 25, 2010, to be a violation of the Ex Post Facto

Clause. A third and final petition for writ of habeas corpus was filed in the California Supreme Court on March 27, 2012. The petition was denied without comment on July 11, 2012.

Petitioner filed the instant federal petition for writ of habeas corpus on October 3, 2012. A first amended petition for writ of habeas corpus was filed on December 14, 2012.

Respondent filed an answer to the petition on April 17, 2013, and Petitioner filed a traverse on May 3, 2013.

## STATEMENT OF FACTS[1]

On July 19, 2010, Petitioner pled no contest pursuant to People v. West[2] to assault with a deadly weapon causing great bodily injury. On July 21, 2010, Petitioner was sentenced to four years in state prison. Pursuant to the plea, Petitioner was sentenced an aggravated term of four years in state prison with credit for time served to be followed by a period of parole of three to four years.

Petitioner re-entered custody of the California Department of Corrections and Rehabilitation on August 5, 2010. Prior to this conviction, Petitioner was on parole, and prior to the parole violation, Petitioner was validated as early as 2004 as an associate of the Mexican Mafia and was confined to segregated housing.

## DISCUSSION

I.   Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. Petitioner is currently incarcerated at the California

///

---

[1] The record is this case is limited because Petitioner pleaded no contest prior to trial and there was no direct appeal. In any event, the claim presented in the instant petition is limited to a challenges to the custody credit which does not require further factual development of the record.

[2] People v. West, 3 Cal.3d 595 (1970).

Correctional Institution in Tehachapi, California, which is within the jurisdiction of this Court. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 327 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

## II.     Standard of Review

Where a petitioner files his federal habeas petition after the effective date of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), he can prevail only if he can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "Federal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown that the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of [the Supreme] Court." Harrington v. Richter, __ U.S. __, 131 S.Ct. 770, 785 (2011) (citing 28 U.S.C. § 2254(d)(1) and Williams v. Taylor, 539 U.S. 362, 412 (2000). Habeas relief is also available if the state court's decision "involved an unreasonable application" of clearly established federal law, or "was based on an unreasonable determination of the facts" in light of the record before the state court. Richter, 131 S.Ct. 785 (citing 28 U.S.C. § 2254(d)(1), (d)(2)). "[C]learly established ... as determined by" the Supreme Court "refers to the holdings, as opposed to the dicta, of th[at] Court's decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. at 412. Therefore, a "specific" legal rule may not be inferred from Supreme Court precedent, merely because such rule might be logical given that precedent. Rather, the Supreme Court case itself must have "squarely" established that specific legal rule. Richter, 131 S.Ct. at 786; Knowles v. Mirzayance, __ U.S. __, 129 S.Ct.

1411, 1419 (2009). Moreover, the Supreme Court itself must have applied the specific legal rule to the "context" in which the Petitioner's claim falls. Premo v. Moore, __ U.S. __, 131 S.Ct. 733, 737 (2011). Under § 2254(d)(1), review is limited to the record that was before the state court adjudicated the claim on the merits. Cullen v. Pinholster, __ U.S. __, 131 S.Ct. 1388, 1398 (2011). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Richter, 131 S.Ct. at 786.

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceedings, § 2254(d)(2)." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). Both subsections (d)(2) and (e)(1) of § 2254 apply to findings of historical or pure fact, not mixed questions of fact and law. See Lambert v. Blodgett, 393 F.3d 943, 976-77 (2004).

Courts further review the last reasoned state court opinion. See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991). However, "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." Richter, 131 S.Ct. at 784.

### III. Challenge to Plea Agreement

#### A. Violation of Plea Agreement

Petitioner contends that he has been limited credit earning in violation of the plea agreement in his underlying criminal conviction.

A criminal defendant has a due process right to enforce the terms of a plea agreement. Doe v. Harris, 640 F.3d 972, 975 (9th Cir. 2011) (citing Santobello v. New York, 404 U.S. 257, 261 (1971). Plea agreements are contractual in nature and are to be construed under ordinary contractual interpretation of state law. Doe, 640 F.3d at 975; Buckley v. Terhune, 441 F.3d 688, 695 (9th Cir. 2006) (en banc). Under California law, the court construes the plain language of the

///

contract and considers the objectively reasonable expectations of the promise. Buckley, 441 F.3d at 695.

In this instance, there is no evidence in the record to support Petitioner's contention that his plea was conditioned upon half-time credit accrual. In fact, the record negates Petitioner's claim because the plea advisement form he initialed and signed indicated a sentence of four years, with no mention of credit accrual. Ex. B to Answer. Furthermore, Petitioner initialed the box on the form which stated, "Except otherwise stated herein, no one has promised or suggested to met that I will receive a lighter sentence, probation, reward, immunity, or anything else to get me to plead guilty/nolo contendere (no contest) as indicated." Id.

Moreover, it is clear Petitioner's ability to earn good-time credit, whatever it may be, was not automatic as it is based on Petitioner's future conduct in prison. Thus, it is implausible that Petitioner could have been promised certain specified future good-conduct credits in exchange for his plea. For instance, there is no way the parties in this case could have foreseen that Petitioner would later be classified as a gang member resulting in disqualification for conduct credits. Accordingly, Petitioner's claim is without merit.

### B.     Intelligent Entry of No Contest Plea

Petitioner also argues that his plea was not intelligently entered because he was not aware when he pled that California Penal Code 2933.6 would reduce his ability to earn conduct credits.

"[O]nly when it develops that the defendant was not fairly apprised of its consequences can [a] plea be challenged under the Due Process Clause." Mabry v. Johnson, 467 U.S. 504, 509 (1984). A guilty plea must be voluntary, intelligent, and entered into with a sufficient awareness of the relevant circumstances and likely consequences resulting from a waiver of certain fundamental rights. Brady v. United States, 397 U.S. 742, 748 (1970); Boykin v. Alabama, 395 U.S. 238, 242-244 (1969).

Here, there is nothing in the record to suggest that Petitioner's plea was anything less than knowing and voluntary. Unlike custody credits for actual time served, conduct credits can be earned, taken away, or restored depending on the prisoner's future behavior while incarcerated. See Cal. Penal Code §§ 2932-2933. The determination whether a prisoner receives conduct credit

depends on Petitioner's own conduct and assessment by the California Department of Corrections and Rehabilitation; it is not a matter determined by the sentencing court. In this instance, Petitioner's is ineligible to receive conduct credits because of his ongoing gang membership. Cal. Penal Code § 2933.6(a); Cal. Code Regs., tit. 15, § 3043.4(b); In re Sampson, 197 Cal.App.4th 1234, 1242 (2011). Petitioner can detach himself from his gang affiliation by participating in the debriefing process and be reclassified as a non-gang member who is eligible to earn conduct credits. See Cal. Code Regs., tit. 15, §§ 3378.1, 3341.5(c)(4). In light of this record, it was not unreasonable for the state court to reject Petitioner's claim that his plea is invalid because the governing statute regarding credit accrual was applied to him prospectively after he entered his plea.

    IV.    <u>Ex Post Facto Violation</u>

Petitioner contends the application of section 2933.6, subdivision (a) to him violated the Ex Post Facto Clause.

In denying the claim in the last reasoned decision, the Kern County Superior Court held, in pertinent part:

> Petitioner protests the denial of credits pursuant to P.C. Section 2933.6(a). This statute precludes those inmates housed in psychiatric housing, administrative segregation, segregated housing unit or validated gang members or associates from earning credits during confinement in such housing.
>
> The effective date of this statute was January 25, 2010. Petitioner does not contest his gang validation, but contends that since it preceded the effective date of this statute it violates the prohibition against ex post facto laws. Consequently, according to petitioner, his release date is extended by two years from 2012 to 2014. This statute has direct bearing on the legal consequences of his release. *Weaver v. Graham*, 450 U.S. 24, 30 (1981).
>
> For a statute to violate the prohibition against ex post facto laws it must: make acts crimes which weren't previously; increase the burden of punishment; or deny a defense where a defense previously existed prior to the statutory enactment. It must in effect create a disadvantage for a criminal defendant. *Collins v. Youngblood*, 497 U.S. 37, 42 (1990); *In re Lomax*, 66 Cal.App.4th 639, 643 (1998).
>
> However, this statute does not punish criminal activity but punishes misconduct in prison. As such not all statutes are punitive [that] enhance prison security. *People v. Delgado*, 181 Cal.App.4th 839, 848 (2010) (citing *Don L. v. Superior Court*, 33 Cal.4th 158, 191 (2004).

>Given the proliferation of gang activity, the legislature intended to create an incentive for prisoners not to misbehave. As such, the statute applies prospectively allowing validated gang members and associates to retain credits already earned. As such, it does not violate the prohibition against ex post facto laws. *In re Sampson*, 197 Cal.App.4th 1234 (2011 (citing *Lynce v. Mathis*, 519 U.S. 433, 435, 449 (1997).
>
>This statute is regulatory. It applies to those inmates who jeopardize prison safety and is not punitive. In *In re E.J.*, 47 Cal.4th 1258, 1274, 1280 (2010), the California Supreme Court found that parolees who must register as sex offenders and comply with the provisions of P.C. Section 3003.5 did not violate the prohibitions against ex post facto laws because they were on parole during the effective date of proposition 83 known as Jessica's Law. The regulatory nature of the statute was the necessity to find compliant housing.
>
>Here, prisoners who misbehave by associating with gang members are precluded from earning conduct credits for the time they are so confined to ensure prison safety. *Sampson* at 1234. Inmates have control of their own destiny either by debriefing, 15 Cal. Code Regs. section 3378.1, or by becoming inactive, 15 Cal. Code Regs. section 3378(c)(5), 15 Cal. Code Regs. section 3378(e).
>
>On the basis of the foregoing, the petition for writ of habeas corpus is accordingly denied.

(LD[3] 2, Opinion at 1-2.)

On January 25, 2010, California Penal Code section 2933.6(a), regarding sentence reduction conduct credits, was amended to read: "(a) Notwithstanding any other law, a person who is placed in a Security Housing Unit, Psychiatric Services Unit, Behavioral Management Unit, or an Administrative Segregation Unit for misconduct described in subdivision (b) or upon validation as a prison gang member or associate is ineligible to earn [sentence reduction conduct] credits pursuant to Section 2933 or 2933.05 during the time he or she is in the Security Housing Unit, Psychiatric Services Unit, Behavioral Management Unit, or the Administrative Segregation Unit for that misconduct."

In order for a law to be ex post facto, it must be both disadvantageous to the offender and retrospective. <u>Weaver v. Graham</u>, 450 U.S. 24, 29 (1981). To determine if a law is retrospective, "[t]he critical question is whether the law changes the legal consequences of acts completed before its effective date." <u>Id.</u> at 31.

///

---

[3] "LD" refers to the state court documents lodged by Respondent on April 19, 2013.

1    In <u>Weaver</u>, the Court noted "the ex post facto prohibition . . . forbids the imposition of
2 punishment more severe than the punishment assigned by law when the act to be punished
3 occurred." 450 U.S. at 30.  At the time Weaver was convicted of his commitment offense, he was
4 eligible for a specific number of gain-time credits awarded for good conduct.  However, two years
5 into his prison sentence, Florida reduced the number of gain-time credits inmate Weaver could
6 accrue.  As a result, inmate Weaver was "disadvantaged by the reduced opportunity to shorten his
7 time in prison simply through good conduct." <u>Id.</u> at 33-34.  The amendment reduced inmate
8 Weaver's credits through no fault of his own.  The only conduct triggering the application of the
9 gain-time statute to inmate Weaver was his commission of the commitment offense-which took
10 place two years prior to the amendment.  Thus, the new law effectively lengthened inmate
11 Weaver's prison term.
12    In <u>Lynce</u>, the Supreme Court applied the two-part test set forth in <u>Weaver</u> to determine if a
13 Florida law which revoked overcrowding credits that had already been awarded was ex post facto.
14 <u>Lynce v. Mathis</u>, 519 U.S. 433, 441 (1997).  The Court held the new law "retroactively cancelled
15 all provisional credits awarded to inmates convicted of murder or attempted murder." <u>Id.</u> at 436.
16 The law clearly disadvantaged inmate Lynce because it "had the effect of lengthening [Lynce's]
17 period of incarceration." <u>Id.</u> at 443.  As in <u>Weaver</u>, the only conduct triggering the new
18 application of the law was the commission of the crime years earlier.
19    In this instance, unlike the amendments in <u>Weaver</u> and <u>Lynce</u>, Section 2933.6 is not ex
20 post facto because it is not retrospective, i.e. it does not punish inmates for conduct that was
21 completed before the effective date of the amendment-January 25, 2010.  Cal. Penal Code §
22 2933.6(a); <u>Kansas v. Hendricks</u>, 521 U.S. 346, 370-371 (1997) (holding Kansas' Sexually Violent
23 Predator Act is not an ex post facto law because, among other reasons, it is not retrospective since
24 it permits involuntary confinement based on a determination of current mental disorder "and does
25 not criminalize conduct legal before its enactment, nor deprive [petitioner] of any defense that was
26 available to him at the time of his crimes.")  Instead, the amendment to the law applies to
27 Petitioner because of his continued association with the Mexican Mafia *after* January 25, 2010.
28 ///

Cal. Penal Code § 2933.6(a). If Petitioner had not been an active associate of the gang after January 25, 2010, the law would not apply to him. Id.

Furthermore, the fact that Petitioner was convicted of his commitment offense and validated as a prison-gang associate before January 25, 2010, is of no consequence to the ex post facto analysis here because the conduct being punished-active association with a prison gang-is continuing in nature and has continued after January 25, 2010. See e.g., Madrid v. Gomez, 889 F.Supp. 1146, 1270-1279 (N.D. Cal. 1995) (upholding the gang validation process and the accompanying periodic reviews to ensure inmates are properly placed in the security housing unit based on their continuing gang affiliation); Cal. Code Regs. tit. 15, § 3378(c)(1) (defining current prison gang activity "as any documented gang activity within the past six (6) years.") Moreover, Petitioner has not been deprived of any previously earned credits, and Petitioner can drop out of his prison gang and restore his credit eligibility at any time by completing the debriefing process. Cal. Penal Code § 2933.6(a); Cal. Code Regs. tit. 15, § 3378.1. Petitioner continues to refuse to end his gang association by debriefing. Thus, there is no merit to Petitioner's claim that section 2933.6 is an ex post facto law violation, and the state court determinations were not contrary to or an unreasonable application of existing Supreme Court precedent. Nor has Petitioner set forth clear and convincing evidence that the state courts made any factual errors.

  V.  Equal Protection Violation

Petitioner claims that the removal of his good-time credits violated his due process and equal protection rights. More specifically, he contends his punishment "mirrors" that of inmates who have committed violent offenses in prison and good time credits can only be removed for a felony, misdemeanor, serious rules violation, or court order.

Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race, religion or membership in a protected class subject to restrictions and limitations necessitated by legitimate penological interests. Wolff v. McDonnell, 418 U.S. 539, 556 (1974); Bell v. Wolfish, 441 U.S. 520, 545-546 (1979). An equal protection violation typically involves state action that discriminates against members of a suspect class. State action which does not implicate a fundamental right or suspect classification

withstands scrutiny under the Equal Protection Clause so long as it bears a rational relation to a legitimate state interest.  See City of New Orleans v. Dukes, 427 U.S. 297, 303 (1976).

Petitioner contends the application of the statutes treats validated gang members the same as non-validated gangs who have committed serious misconduct in prison.  However, the Equal Protection Clause only protects similarly situated classes from suffering disparate treatment.  In essence, Petitioner asked the state court to ensure that classes of inmates which are not similar to be treated differently.

Petitioner appears to further argue that Nebraska's treatment of their inmates' custody credits should be applied by California to his credits.  Petitioner is mistaken.  There is no requirement that California must follow Nebraska's law.  In fact, California need only provide equal protection of the laws to persons "within its jurisdiction." City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439-440 (1985).

Furthermore, the California credits statute is rationally related to a legitimate state interest. Id. The superior court properly noted, "given the proliferation of gang activity, the legislature intended to create an incentive for prisoners not to misbehave. . . .  Here, prisoners who misbehave by associating with gang members are precluded from earning conduct credits for the time they are so confined to ensure prison safety." (LD 2, Opinion at 2.)  Thus, even if Petitioner could show an inference of disparate treatment, the state has a legitimate interest in distinguishing between gang-member inmates and non-gang-member inmates when affording custody credits, and there is no showing of an equal protection violation.

VI.   Violation of California Code of Regulations, Title 15

In his last claim, Petitioner contends the State failed to comply with the California Code of Regulations, Title 15, that were in effect at the time he was validated as a prison gang member.  It appears Petitioner's claim is based on his belief that he should not be subjected to Penal Code 2933.6 as amended in 2010, but rather the regulation that was in effect in 2004, when he was validated as a prison gang member.

Petitioner's claim is not cognizable by way of § 2254 as it involves an alleged violation of state law only.  There is no federal question present, as errors of state law cannot be repackaged as

federal errors simply by citing the due process clause. Poland v. Stewart, 169 F.3d 573, 584 (9th Cir. 1999); see also Estelle v. McGuire, 502 U.S. 62, 67 (1991) (in conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.)  The state courts interpretation and application of state law is binding on this Court and there is no basis for relief by way of § 2254.

### VII. Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 cases requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the petitioner.  The requirement that a petitioner seek a certificate of appealability is a gate-keeping mechanism that protects the Court of Appeals from having to devote resources to frivolous issues, while at the same time affording petitioners an opportunity to persuade the Court that, through full briefing and argument, the potential merit of claims may appear. Lambright v. Stewart, 220 F.3d 1022, 1025 (9th Cir. 2000).  However, a state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, and an appeal is only allowed in certain circumstances. Miller-El v. Cockrell, 537 U.S. 322, 335-336 (2003).  The controlling statute, 28 U.S.C. § 2253, provides as follows:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
>
> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.
>
> (c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from--
>
> > (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court;  or
> >
> > (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

1  This Court will issue a certificate of appealability when a petitioner makes a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  To make a substantial showing, the petitioner must establish that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further'."  Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 (1983)).

In the present case, the Court finds that Petitioner has not made the required substantial showing of the denial of a constitutional right to justify the issuance of a certificate of appealability.  Reasonable jurists would not find it debatable that Petitioner has failed to show an entitlement to federal habeas corpus relief.  Accordingly, the Court declines to issue a certificate of appealability.

**ORDER**

Based on the foregoing, it is HEREBY ORDERED that:

1. The instant petition for writ of habeas corpus is DENIED;
2. The Clerk of Court is directed to enter judgment in favor of Respondent; and
3. The Court declines to issue a certificate of appealability.

IT IS SO ORDERED.

Dated:  May 21, 2013              /s/ Barbara A. McAuliffe
                                  UNITED STATES MAGISTRATE JUDGE